Benjamin Robinson representing Miss Anderson. You may proceed. Thank you, sir. Your honor, this is a case that arises out of Title Seven. My client brought a claim for discrimination, harassment, and retaliation for engaging in protected activity. We have set forth our arguments in our brief, your honor, as opposed to standing here and speculating as to what arguments were acceptable and unacceptable. I would prefer if the court has any questions that they would ask me the questions and then I can respond. There would probably be more. Well, counsel, what allegations do you have that white persons were treated differently? Your honor, it said race. I don't think we're limited to white people or black people. I think we can limit to anyone in any race. And there was quite a bit of evidence that a number of people, as we listed, were treated much better than she was. And where is that reflected in the evidence submitted on summary judgment?  One place it's indicated, your honor, is in where we speak of the treatment regarding how she and others were treated differently. We spoke about the way that trivial incidences were treated. One was that she would be, she would receive a reprimand, whereas others who would, who would come to her would not receive a reprimand, but it would be a general notice that would be passed around over the, throughout the department. Another way was that she was demoted, your honor, without any basis for the demotion. Their claim was that she was a probationary employee during a period of time after she had completed her probationary period. The rules for Fresno County provide that one is required. Excuse me, do you have some water, your honor? Go right ahead. Thank you. Thank you, your honor. Were you able to show that a white person or a non-black in similar circumstances was not demoted where they should have been if they were done, treated equally with this individual? As we said in our brief, your honor, it's a ruse. There are no others that were treated the way that she was treated. The rule was that once you pass probation, then you don't have a second probation. Well, as it was prior to the others, no one else had a second probation. They weren't able to show that someone else was placed on probation for the second time. She was the only person that was placed on a second probationary period, according to them. However, the evidence shows that on January the 6th, when she allegedly when she was promoted and the alleged probation should have begun, there was no she wasn't told of this probation by her boss or by her supervisors or her managers. In fact, they had an evaluation by her supervisor, which took place six months later. In that evaluation, they had a number of boxes to check as to whether it was probation, how she was doing, whether it would be a salary increase. The salary increase was checked. Her performance was checked. The probationary box was not checked. So there was no indication that she was on probation. The only evidence we ever came up with that she was placed on probation was generated in July, which was after the six-month evaluation. In that, they said something about probation. But that if the probation began in July, as opposed to January, then why? Isn't it a wrongful termination, a wrongful employment claim rather than necessarily a discrimination claim? I mean, I think Judge Fletcher's question seems like in comparison with what other employees You say she was wrongfully demoted and nobody else was. But what is your evidence about the racial component of all the other employees in the office? Were they all white? She was the only African-American that held her particular rank at HES at the position from which she was demoted. There may have been some other HEAs. Right. But there was no evidence that was brought forth that there were HEAs. They never provided that information, that is, health, educational assistance. But you asked about the termination. That is just one of the many acts of discrimination that occurred, Your Honor. But there were things that occurred far before that, that she spoke of, that we spoke of in our brief. Did your complaint below allege wrongful termination? Did it in the judicial complaint? No, sir. Did you ever seek to amend to allege wrongful termination? No, sir. Okay. Then how can we deal with that? Well, the rule provides, Your Honor, that if they were placed on those two things, either you can amend or through discovery you can make it known to the other party that you are seeking, that this is an element that you are part of your lawsuit. We sent, after we filed the complaint following the termination, after we filed the charge with the DFEH and EEOC, we sent all that information, which we were alleging in there, that the termination was a result of the discrimination and was retaliatory and also was included as part of our claim. Okay. Anything further? Not at this time, Your Honor. Okay. You have about eight minutes for a rebuttal. Thanks for coming in today. Thank you, sir. Your argument. We have from the county at this time. Thank you. Mr. Littlewood. May it please the Court. My name is William Littlewood, and I represent the Appellee County of Fresno in this matter. This appeal or the response to this appeal is rather straightforward. As I think some of the questions asked by the panel this morning indicate, there is simply no evidence in the record of any discriminatory intent on behalf of the county directed towards Ms. Anderson. In response to your questions, the answer was not given or it was not forthrightly given that in response to the motion for summary judgment and the evidence that we put forth, under the standards that are applicable to summary judgment standards, our motions, the plaintiff did not come forth with any evidence to show that somebody similarly situated that was not African-American was treated more favorably or differently than her. She did not offer any evidence. It's a blank part in her response. I'm concerned about this matter of her being on probation twice. Were others put on probation twice? Your Honor, that wasn't an issue that was put in the record, and I am personally not aware of whether or not people were put on probation twice. It is my understanding, however, that the rule that's relied upon by Ms. Anderson, for which she hasn't put forth any particular personal knowledge as to its applicability, provides that probation is only applicable in a given level, meaning for a position. The HEA position and the HES position are completely different positions, and they may have varying pay scales within them. And so going up a pay scale isn't going to require you to be in another probationary period, for instance. However, there's no evidence that Ms. Anderson was able to obtain during discovery that would indicate that she was treated any differently than anybody else who had ever been promoted up to an HES did not have to go through a probationary period. Was she given a choice at that point and said, you know, you can stay in your current position, or if you want to be upgraded, there's another probationary period? I do not know that, and that evidence is not in the record, Your Honor. What I do know is that moving from an HEA position to an HES position was viewed as a promotion, and the way the probationary period works within the county of Fresno is, is if you fail probation, you're not fired. You just get put back down to your former position. How do we know that in the record? Well, it wasn't raised in the record because it was never – there was never any affirmative evidence put forth by the plaintiff to show that she was treated differently, and so the – Or by the county to describe the procedures either. Your Honor, I believe the procedures were described that they followed the procedures in accordance with county policy, and all we have is the plaintiff's speculation that the rule as she reads it was not applied equally with respect to her. What was the county's stated reason for the demotion? For the demotion? Yeah. It's within the record, Your Honor. She – if I recall correctly, she did not properly follow up on paperwork. I mean, there were a whole host of issues and a very detailed evaluation that was given that set forth the reasons for her demotion. In addition, she was – Would it be fair to say that the reason was that she unsuccessfully completed the probationary period? I would say so, yes. You're going to summarize it? Yes. And basically – that basically culminated in the final evaluation that was prepared, and if it's a needs improvement or unsatisfactory, it goes up the chain for final approval, and you automatically get rejected on probation. She did claim and does claim here that she was the only one ever – or the only one subjected to a second period of probation. Did the county respond to that? The county offered evidentiary objections to that, Your Honor, which, since there was no oral argument, there was no formal ruling on that evidentiary objection as being without foundation and completely speculative. In addition – That's an important point, and the county didn't counter and say this is what we do, this is the rule, we've applied it to X, Y, and Z. Well, I believe that the county in its declarations did set forth that it followed its rules and procedures in terms of both evaluating its employees and also moving them, or at least with respect to Ms. Anderson, moving her up the chain and then demoting her when appropriate. And there has been no evidence otherwise except for Ms. Anderson's speculation. In addition, even if those facts were not to bear out or if the county had not produced that evidence to rebut the speculation on behalf of Ms. Anderson, one must not lose sight of the fact in response to the motion for summary judgment, Ms. Anderson did not provide any evidence in response to our undisputed fact that she had no evidence and could not adduce any evidence to support the fact that one – But you didn't put on any affirmative evidence. You didn't have an affidavit saying here are the employees we have in this unit, here are other employees who are subjected to the same treatment, et cetera. There's nothing like that in the record. No, there is not, nor do I believe we have to do so under the relevant summary judgment standards, in that we conducted discovery and nothing that she presented to us in discovery suggested that she had information that would support those elements, and therefore, we identify that fact in our summary judgment motion in the separate statement of undisputed facts, thus shifting the burden to her to put on affirmative evidence to that fact, which she could not do. Suppose in a hypothetical case that someone says they were either wrongfully demoted or wrongfully terminated, and the employer – this is a hypothetical question – and the employer's response is, lookit, we treated you right by the book. We went step 1, 2, 3, 4, 5, 6 from our personnel manual. We did not deviate it from it. The person says, yes, but I'm the only person you did this to. At that point, is that employer in my hypothetical required to come forward and say, no, you're not? Are you saying in connection with a litigation or in connection? In my hypothetical, doesn't the law suggest that the employer should come back and say, here's the workforce, here's how many people are in it, we have indeed demoted people in a similar position, and here's the racial makeup of our workforce, and your claim of discriminatory demotion is just not accurate factually? That would be one way to attack one of the elements. But in addition, she's missing any evidence of the element that her position was filled by somebody that was similarly situated, yet not an African-American. She simply has no evidence to support that fact, because – To make out a demotion claim, she has to show that someone took her place? Well, it's a hiring-slash-demotion analysis that we set forth in our brief, Your Honor. So who took her place? I don't believe anybody did. So? I mean, what is that? That doesn't help either party. But it does not support her evidence. It does not support her argument that she was, in fact, discriminated on the basis of her race. Your argument seems to be, we followed the rules, and their argument is, the rules weren't applied equally to everybody. What's your response to that in terms of the record? The record is that there is no competent admissible evidence to establish that the rules were not followed. But you didn't put on any affirmative evidence either. You just said, we followed the rules. But then she essentially admitted it by not offering any evidence, thereby not putting us to the burden to rebut her evidence. So – Let me ask you a different question. And this is probably in the record, and I may have missed it. Is there a grievance procedure opposed? I'm not talking about the filing of discrimination claims and so forth. Does the county have a grievance procedure for work-related disputes? I believe there is an internal grievance procedure that's followed. You don't know, though, and it's not in the record? I believe that – what I know from the record is that Ms. Anderson had contacted people within personnel to grieve claims. And so that is my understanding that there must be a procedure for it. Okay. Anything else? Unless you have any questions, other questions for me? I don't see any more. Thanks for coming in today. Mr. Robinson, you have some time for rebuttal. Yes, Your Honor. One of the questions was an issue regarding similarly situated non-African American employees who were treated more favorable than Ms. Anderson. And we had that in our opening brief on pages 29 through 37. Okay. Anything else? Yes, there was one other issue was regarding the promotion from the HEA to the HES position. If you would look at the rule that was applied, and we sent this rule to Fresno County because we researched to find a rule. They didn't provide this to us. And the rule provides that if you are in a category, in a class, these were HE health education employees. You go from health education assistant to health education supervisor and so forth up the chain. It wasn't as though she was going into a whole different category, such as, for lack of a better term, for secretarial pool. So the rule said as long as you stay in this particular department, in this particular category, you don't have to serve a second probationary period. If you would go to the clerical group, then, yes, you may be required to serve a second, because that's a new area. They never addressed this. And as was said this morning, they never offered any rational basis for the action that they took. This is, I probably missed this in the record, but can you tell me, had discovery closed at the time that the summary judgment motion was made or not? Oh, yeah, I'm sure discovery, let me just think back. Yes, yes, it had. So everything that we know is on the table that you would try the case with? Yes, we were going to ask for discovery to be open so we could take some of the depositions of people that we didn't take. But if we would have to go to trial, we would go, if we denied our motion, provided the court reverses it and sends it back to the district court, we would ask the district court for an opportunity to depose some of the people, some of their employees. And we had a couple of people that were in the civil and so we didn't, and another one was in, I think, in Iraq. So we didn't depose at least three people, three or four people that we would like to depose. But based on if we had to, we could go with what we have now. I think that it would shorten the time considerably if we could depose those people. Okay. Anything more? No, sir. Okay. Thank you both for your arguments. Mr. Robinson, is employment law part of your regular practice? Yes, sir. Okay. All right. Thank you for your argument this morning. Thanks for coming down. And the case just argued will be submitted for decision and the court will stand in recess for the day.
judges: Fletcher B. , Hawkins, Thomas